IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND ) ) ) | |
| Plaintiff, ) | CIVIL ACTION NO. 05-0955(PLF) |
| v. ) ) | |
| JMC GLASS & MIRROR, INC., a dissolved Illinois corporation, *et al.* ) ) ) | |
| Defendants. ) | |

## DECLARATION OF GARY MEYERS

Gary Meyers declares under penalty of perjury that the following is true and correct:

1. My name is Gary Meyer and I am the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund" or "Fund"). I have held that position since February 1991.

2. The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. Section 1002(A)(i), established by the International Union of Painters and Allied Trades, AFL-CIO-CFC ("International"), and employers in private industry whose employees are members of or otherwise represented by the International and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension Fund is administered in the District of Columbia from its principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

3. A complete and accurate copy of the Agreement and Declaration of Trust of the Pension Fund is attached to the Complaint as Exhibit 1 and is incorporated herein by reference.

155631-1


EXHIBIT

4.      Defendant, JMC Glass & Mirror, Inc. a/k/a JMC Glass & Mirror Inc. a/k/a JMC Glass & Mirror ("Company"), is an unincorporated business located in Bloomington, IL.

5.      Defendants, Max Cheatham ("M. Cheatham"), individually and d/b/a JMC Glass & Mirror, Inc. a/k/a JMC Glass & Mirror Inc. a/k/a JMC Glass & Mirror and Joan Cheatham ("J. Cheatham" and jointly with M. Cheatham, "Individual Defendants" and together with Company, "Defendants"), are owners, partners or proprietors of Company, an unincorporated business.

6.      Defendants are currently employers that are party to or bound by collective bargaining agreements with various local unions and district councils affiliated with the International, including Local 157 and Local 1164. Each of the collective bargaining agreements requires employers to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit.  Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to submit either incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.      In addition to monthly contributions, the Pension Fund also requires employers to submit monthly remittance reports, on which employers are to list the Defendants' employees and the hours for which the employees received pay that month.

8.      Based on an audit performed on October 27, 2004, Defendants have failed to submit contributions in the amount of $5,506.83 for their employees for the period January 2002 through June 2004. See, Exhibit 2.

9.      Defendants owe interest through July 15, 2005 in the amount of $741.81 on the unpaid pension contributions set forth in ¶8. The interest has been calculated in accordance with

155631-1                                2

the fluctuating IRS interest rate, as provided at Section 10 of the International Painters and Allied Trades Industry Pension Plan ("Plan") (attached to the Complaint as Exhibit 2 and incorporated herein by reference).

10. Section 10 of the Plan parallels the ERISA statute, 29 U.S.C. § 1132(g)(2), and requires the assessment of liquidated damages against Defendants in an amount equal to the greater of the following: the amount of interest owed on the delinquent principal, or twenty percent (20%) of the delinquent principal. Defendants owe $5,506.83 in unpaid contributions. Twenty percent (20%) of the unpaid contributions is $1,101.36. As noted above, the total interest owed through July 15, 2005 on the unpaid contributions is $741.81. This amount is less than the amount of liquidated damages as calculated at the twenty percent (20%) rate by the Pension Fund. Therefore, Defendants owe a total of $1,101.36 in liquidated damages on the unpaid contributions.

11. Article VI, Section 6 of the Agreement and Declaration of Trust of the Pension Fund provides for recovery of audit costs in the event that an audit of a signatory employer's payroll books and related records reveals a delinquency to the Pension Fund. The audit performed October 27, 2004 for the period January 1, 2002 through June 30, 2004 revealed a delinquency and consequently Defendant owes $215.40 in audit costs.

12. Despite a continuing contractual obligation to do so, Defendants have repeatedly failed to submit timely remittance reports and pension contributions. The Pension Fund is required to pay pensions to all properly vested employees of contributing employers. Employees of contributing employers continue to accrue pension credits, based on the hours of their employment, regardless of whether their employers make pension contributions on their behalf

for these hours, as contractually required. The Pension Fund's obligation to recognize these pension credits and to pay pensions to vested employees is absolute and continues even if the employers fail to pay their required pension contributions. The refusal of Defendants to contribute as they are bound means irreparable harm and injury to the Pension Fund --an obligation to make pension payments to employees without the necessary pension contributions from Defendants to cover those benefits. Moreover, whenever a Defendant fails to submit remittance reports accurately reflecting the number of hours for which its employees received pay, the Defendant prevent the Pension Fund from calculating the proper pension credits due to Defendant's employees. In addition, the Fund also must engage in time consuming and costly efforts to collect the unpaid contributions. These efforts include letters and phone calls to the employer, investigating other sources for collection (i.e. labor and materialmens bonds and mechanics liens) and attempting to calculate delinquency amounts and benefit eligibility through other sources (e.g. paystubs), if available. The actual losses and added costs (in terms of dollar amount, capital and manpower) incurred by the Fund in connection with an employer contribution delinquency are not capable of precise determination, but they are substantial. Defendants, therefore should be required to file all past due remittance reports and timely submit current remittance reports and pension contributions in the future.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Date: 7-15-05

GARY MEYERS